## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| MEGAN RUNNION, a minor, through her mother and next friend, EDIE RUNNION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: _____ |
| GIRL SCOUTS OF GREATER CHICAGO AND NORTHWEST INDIANA | ) ) ) | Jury Demanded |
| Defendant. | ) ) | |

## COMPLAINT

Megan Runnion, through her mother and next friend, Edie Runnion, and by her attorneys, sues the Defendant, Girl Scouts of Greater Chicago and Northwest Indiana ("Girl Scouts" or "Defendant"), and states as follows:

## PRELIMINARY STATEMENT

1.      Megan Runnion is a twelve-year-old girl who joined Girl Scouts when she was in kindergarten. Megan is deaf, and communicates using American Sign Language ("ASL"). For six years, Megan was provided with a sign language interpreter by Girl Scouts for troop meetings and outings, giving her an opportunity equal to her peers to participate in Girl Scout activities. Megan loved being a Girl Scout.

2.      Near the start of the 2011-2012 school year, as Megan began sixth grade, Girl Scouts stopped providing sign language interpreters. Despite requests by Megan's mother to reinstate the interpreter services, Girl Scouts refused. Then, in January of 2012, without warning to Megan or her family, the troop leaders announced that Megan's troop was disbanding. Megan's mother was informed that the troop was being disbanded because of her insistence that

the Girl Scouts provide interpreter services for Girl Scout programs and activities. Megan has not been offered placement in a new troop with interpreter services, despite her mother requesting such placement. Thus, for the very first time since kindergarten, Megan is not a Girl Scout. Megan is heartbroken at the loss of this important part of her life.

3.     By refusing to provide sign language interpreter services and by disbanding the troop in retaliation for requesting auxiliary aids and services, Defendant violates Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Megan brings this lawsuit to compel Defendant to cease its discriminatory practices and to implement policies and procedures that will ensure effective communication and equal access for Megan so she can participate in and benefit from Defendant's programs and activities. She also seeks compensatory damages, attorneys' fees, and costs.

## JURISDICTION

4.     Plaintiff's claims arise under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

5.     This Court has jurisdiction pursuant to 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the laws of the United States, and 28 U.S.C. §§1343(a)(3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government.

6.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district, having its principal place of business at 20 S. Clark, Suite 200, Chicago, Illinois 60603.

2

## PARTIES

7.     Plaintiff, Megan Runnion, a minor, resides in Cook County, Illinois, with her parents, Vince and Edie Runnion, and her siblings.

8.     Next friend, Edie Runnion, is Megan's mother and resides in Cook County, Illinois, with her husband and four children.

9.     Defendant is a not-for-profit corporation organized under the laws of Illinois whose stated mission is to "build girls of courage, confidence, and character, who make the world a better place" and to create programs for "girls of all age levels, races, ethnicities, beliefs, economies, geographies and physical abilities."

10.     According to Defendant's 2010-2011 annual report, its net assets exceed 28 million dollars.

11.     Defendant's major donors include the State of Illinois Department of Human Services, the United States Department of Justice, and the City of Chicago, through a Community Development Block Grant.

12.     Defendant is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

13.     Defendant maintains its principal place of business at 20 S. Clark Street, Suite 200, Chicago, Illinois 60603.

14.     Defendant is comprised of six counties in Illinois, and four counties in Indiana.

## FACTUAL ALLEGATIONS

15.     Plaintiff Megan Runnion is a twelve-year-old girl who is deaf.

16.     Megan requires the assistance of a sign language interpreter to receive information in group settings. The interpreter conveys through sign language the words spoken by the other members of the group.

17.     Megan is able to speak, but her speech is not always understood by hearing people. In instances where Megan cannot make her speech understood, the sign language interpreter performs the additional function of voicing what Megan is communicating through sign language.

18.     The "Language/Mode of Communication Used by Student" specified in Megan's Individualized Education Program, developed by her school district, is "ASL." Megan receives 900 minutes per week of sign language interpreter services and 120 minutes per week of speech therapy services. Two of Megan's teachers know sign language, so Megan does not need the services of an interpreter when she is being educated by those teachers.

19.     The school district's provision of sign language interpreter services allows Megan to be included in many classes with nondisabled students.

20.     The school district also provides an interpreter so that Megan can participate in and benefit from all after school clubs in which she is involved, including art and cooking.

21.     With interpreter services, Megan has been successful in school; she was one of only ten students in her school to receive the 2012 President's Education Award for Outstanding Academic Achievement from President Obama.

22.     In the fall of 2005, when she began kindergarten, Megan became a member of Girl Scout Troop #795, which subsequently became known as Girl Scout Troop #40795.

23.     Troop #40795 was a member troop of Defendant until January 2012.

4

24.     Megan joined Girl Scouts as a "Daisy," which is the scouting level for the youngest girls.

25.     Megan's three siblings have all been involved with scouting.

26.     Troop #40795 held monthly meetings, and members also attended outings such as rock climbing and camping trips.

27.     Megan loved being a Girl Scout and rarely missed a troop meeting or outing.

28.     Megan looked forward to seeing her friends at Girl Scouts, and especially looked forward to the troop camping trips.

29.     Defendant provided sign language interpreter services for troop meetings and outings from the date Megan joined Girl Scouts until August, 2011.

30.     By providing a sign language interpreter, Defendant enabled Megan to understand what was said at Girl Scout meetings and activities, gave her equal access to the crucial social and leadership development offered to her peers, and allowed full communication among Megan, her peers, and her troop leaders.

31.     On two camping trips, at the troop leader's suggestion, no interpreter was present. But on each occasion, Megan had significant difficulties in participating and afterward said that she needed an interpreter at future programs.

32.     On August 29, 2011, as she had done before, Megan's mother submitted a request for sign language interpreter services prior to the start of the scouting year.

33.     On the same day, Defendant denied the request by e-mail, stating that "Currently the Council does not pay for these services."

34.     On October 27, 2011, Megan's mother submitted a reasonable accommodation request for interpreter services for a rock climbing event to take place on November 20, 2011.

5

35.     On November 10, 2011, Equip for Equality and the National Association of the Deaf, whose assistance Megan's parents had sought after the August denial of interpreter services, sent a letter to Defendant, requesting a qualified sign language interpreter for all of Megan's Girl Scout meetings and outings, including the scheduled November 20, 2011 rock climbing event.

36.     On November 17, 2011, Defendant responded to the November 10, 2011 letter by denying that it was subject to Section 504 of the Rehabilitation Act.  As to future meetings and events, Defendant stated that it was in the process of developing a uniform policy.

37.     Defendant provided an interpreter for the November 20, 2011 rock climbing event.

38.     At the same time, Girl Scouts stated that it was still in the process of formulating a response to Edie Runnion's request for an interpreter for all scouting meetings and events.

39.     On January 8, 2012, the leaders of Troop #40795 announced at a dinner event that Troop #40795 would be disbanded.

40.     This announcement was a complete surprise to Megan and her mother, neither of whom knew that the troop was going to be disbanded.

41.     Edie Runnion was advised by the troop leaders that as a result of the request for interpretive services, certain limitations were being imposed on the troop by Girl Scouts, which made it impractical for the troop to continue and in turn led to the decision to disband the troop.

42.     The troop leaders told Edie Runnion it was her fault that the troop was disbanding, accused her of being selfish by thinking only about Megan and not the other girls in the troop, and said that they had been told by the CEO of Girl Scouts that Edie's Runnion's

6

actions in asking for an interpreter for Megan would cause registration fees for next year to triple.

43.     The troop leaders also told Edie Runnion that, because she was asking for an interpreter for Megan to be able to understand what was being said at the meetings, she was making her daughter more dependent and disabled.

44.     Megan very much wants to join and participate in another troop, but because Defendant has not agreed to provide interpreter services in any troop in its jurisdiction, she is unable to do so.  If Defendant provided interpreter services, Megan would happily join a new troop.

45.     Defendant has a "Financial Assistance Policy" which states:  "In order to support the participation of girls and adults with special needs, the Council will provide resource lists for girls and adults requiring skilled assistants to participate in Council programs and activities. The contracting of these assistants (e.g., interpreters, occupational therapists, nurse's aides) is the responsibility of the girl's parent(s) or guardian(s) or the adult requiring assistance."

46.     Defendant has recently adopted a "pilot policy," which states that "Through September 30, 2012 only, support services for those with special needs (e.g., interpreters, occupational therapists, nurse's aides) up to an individual maximum of $50/month per requester. The requestor is responsible for paying the balance of services in excess of $50. Regardless of the number and nature of the requests, there is a council-wide maximum of $5,000."

47.     The dollar amount of $50 will not pay for the use of an interpreter on even one occasion.

### COUNT I- VIOLATION OF THE REHABILITATION ACT THROUGH DISCRIMINATION AGAINST MEGAN RUNNION

48.     Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1- 47 above.

49.     Section 504 provides, in pertinent part: "[N]o qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. . ." 29 U.S.C. § 794.

50.     Megan is a qualified individual with a disability pursuant to Section 504 because she is substantially limited in the major life activities of hearing and speaking. 29 U.S.C. § 705(20)(B).

51.     By refusing to provide interpreter services -- and thereby failing to provide the means for Megan to have effective communication with her peers, troop leader, and others -- Defendant has excluded Megan from participation in and denied her the benefits of its program and services, solely by reason of her disability.

52.     Defendant's policy of treating the contracting of interpreters as the responsibility of a girl's parent or guardian or the adult requiring assistance violates Section 504.

53.     Defendant's "pilot policy," which limits funding for interpreter services to a maximum of $50/month per requester and which provides that the requestor is responsible for the balance of the services in excess of $50, violates Section 504 by conditioning auxiliary aids and services on financial need, failing to provide sufficient funds to hire an interpreter, and delegating to the person with a disability (or her parents) the responsibility for hiring the interpreter.

8

## COUNT II - VIOLATION OF THE REHABILITATION ACT THROUGH RETALIATION AGAINST MEGAN RUNNION

54.     Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1- 47 above.

55.     Section 504 provides, in pertinent part: "[N]o qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. . ." 29 U.S.C. § 794.

56.     Megan is a qualified individual with a disability pursuant to Section 504 because she is substantially limited in the major life activities of hearing and speaking.  29 U.S.C. §705(20)(B).

57.     Megan and her mother engaged in protected activity by requesting reasonable modifications, and auxiliary aids and services for Megan's hearing disability.

58.     By disbanding Megan's troop in retaliation for Megan and her mother requesting reasonable modifications, and auxiliary aids and services, Defendant retaliated against Megan for her assertion of rights under Section 504 of the Rehabilitation Act.

### PRAYER FOR RELIEF

WHEREFORE, Megan, through her mother and next friend, Edie Runnion, respectfully request this Court to:

(1)     Issue a declaratory judgment that Defendant's actions, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

(2)     Enjoin Defendant from further discrimination against Megan and other deaf or hard of hearing individuals;

(3)     Order Defendant to promulgate new written policies and procedures to ensure that Defendant will provide auxiliary aids and services at all Girl Scout programs and activities to ensure effective communication with deaf and hard of hearing individuals;

(4)     Order Defendant to promulgate new written policies and procedures to ensure that Defendants will notify individuals who are deaf or hard of hearing, including Megan, of their right to auxiliary aids and services at Defendants' programs and activities;

(5)     Award Plaintiff compensatory damages;

(6)     Grant Plaintiff attorneys' fees, costs and disbursements associated with this lawsuit; and

(7)     Award Plaintiff any and all other relief that may be necessary and appropriate.

Respectfully Submitted,

MEGAN RUNNION, a Minor, through
Her mother and next friend,
EDIE RUNNION

By:/s/Steven P. Blonder
One of Her Attorneys

Steven P. Blonder (ARDC No. 6215773)
Joanne A. Sarasin (ARDC No. 0624335)
Much Shelist, PC
191 North Wacker Drive, Suite 1800,
Chicago, Illinois 60606
Telephone: (312) 521-2000
Facsimile: (312) 521-2100
sblonder@muchshelist.com
jsarasin@muchshelist.com

Laura J. Miller (ARDC #6202721)
Barry C. Taylor (ARDC #61999045)
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Telephone: (312) 341-0295
laura@equipforequality.org
barryt@equipforequality.org

Of Counsel:
Marc Charmatz
Debra Patkin
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910
(301) 587-7732 (phone)
(301) 587-1791 (fax)
marc.charmatz@nad.org
debra.patkin@nad.org

*Attorneys for Plaintiff*