IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MEGAN RUNNION, a Minor, Through her Mother and Next Friend, EDIE RUNNION,** | |
| Plaintiff, | Case No. 12 C 6066 |
| v. | Hon. Harry D. Leinenweber |
| **GIRL SCOUTS OF GREATER CHICAGO AND NORTHWEST INDIANA,** | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint and Plaintiff's Motion for a Preliminary Injunction. For the reasons stated herein, the Court grants Defendant's Motion to Dismiss and denies Plaintiff's Motion for a Preliminary Injunction.

### I. BACKGROUND

Plaintiff Megan Runnion ("Plaintiff") is a twelve-year-old girl from Schaumburg, Illinois who is hearing impaired. Plaintiff requires the assistance of a sign language interpreter to communicate in group settings.

In or about Fall 2005, Plaintiff began kindergarten and joined Girl Scouts Troop #40795. Plaintiff attended the troop's monthly meetings and outings, and alleges that the Girl Scouts (hereinafter, the "Defendant") provided Plaintiff sign language

interpreter services from the date she joined Troop #40795 until approximately August 2011.

On August 29, 2011, Plaintiff alleges that her mother requested sign language interpreter services for Plaintiff as she previously had done from 2005-2011. However, this time, Defendant denied the request. Plaintiff alleges that Defendant informed her that her request was denied because Defendant no longer paid for these services.

Upon receiving this notification, Plaintiff's mother contacted Equip for Equality and the National Association of the Deaf for assistance. These organizations sent Defendant a letter requesting a sign language interpreter be provided to Plaintiff for an upcoming rock climbing outing that Plaintiff's troop had planned. On November 17, 2011, Defendant responded to this letter. In it, Defendant denied that it was subject to Section 504 of the Rehabilitation Act, as the organizations claimed, and also informed the organizations that it was in the process of developing a uniform policy pertaining to sign language interpreter services for its individual troop members. Subsequently, Defendant provided Plaintiff a sign language interpreter for the rock climbing event and one of Plaintiff's troop meetings.

On January 8, 2012, the leaders of Plaintiff's troop announced that the troop was disbanding. Plaintiff alleges that troop

leaders told Plaintiff that the troop was disbanding because of Plaintiff's requests for sign language interpreters.

On August 1, 2012, Plaintiff filed her Complaint against Defendants. In the Complaint, Plaintiff alleges that Defendants violated Section 504 of the Rehabilitation Act of 1973 ("Section 504") for failing to provide her sign language interpreter services. Plaintiff also alleges Defendant violated Section 504 by retaliating against Plaintiff when it disbanded her troop.

Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).

## II. **LEGAL STANDARD**

### A. **Lack of Subject Matter Jurisdiction-Rule 12(b)(1)**

On a motion to dismiss under Rule 12(b)(1), the Court must accept "as true all facts alleged in the well-pleaded complaint and draw[] all reasonable inferences in favor of the plaintiff." *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). If however, the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the Court may consider matters beyond the allegations in the complaint. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). The burden of proof is on the party who seeks to establish jurisdiction is proper. *SRT Enters., Inc. v. Direct Energy Bus., LLC*, No. 11-

CV-4933, 2011 U.S. Dist. LEXIS 145999 at *7 (N.D. Ill. Dec. 20, 2011).

### B. Failure to State a Claim Upon Which Relief Can be Granted-Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in a Plaintiff's complaint and draws all inferences in Plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiffs need not allege "detailed factual allegations," but must offer more than mere conclusions or "a formulaic recitation of the elements of the cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Naked assertion[s] devoid of further factual enhancement" will not suffice – a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

### III. DISCUSSION

Defendant moves under FED. R. CIV. P. 12(b)(1) to dismiss the Complaint, which alleges violations of Section 504. Defendant seeks dismissal on the theory that, because Defendant does not receive federal financial assistance "as a whole" and because Plaintiff was not a participant in any of those programs within

Defendant's organization where federal funding was provided, Section 504 is inapplicable. Thus, Defendant argues Plaintiff's Complaint fails to allege a federal question under 28 U.S.C. § 1331 and fails to allege diversity under 28 U.S.C. § 1332 and therefore must be dismissed for lack of subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Defendant also moves under FED. R. CIV. P. 12(b)(6) and argues Plaintiff's Complaint must be dismissed because it fails to state a claim.

In order to state a claim under Section 504, Plaintiff must allege (1) that she is disabled; (2) that she was otherwise qualified for the position or membership; (3) that she was excluded solely by reason of her disability; and (4) that the relevant program she was excluded from is receiving federal financial assistance. *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 119 (7th Cir. 1997).

Section 504 of the Rehabilitation Act provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reasons of her or his disability be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. . . .

29 U.S.C. § 794.

In 1988, Congress amended the definition of the terms "programs" and "activities" to broaden the scope of those entities

which must abide by Section 504. As amended, Section 504 now defines a program or activity to include "all operations of . . . an entire corporation, partnership, or other private organization" if either (1) federal financial "assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole," or (2) the organization "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreations" and the organization receives federal financial assistance. 29 U.S.C. § 794(b)(3)(A)(i)-(ii), as amended by Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 § 4 (1988). However, if an organization does not fall into either of the two aforementioned categories, the entire organization is not regulated because some other program or division receives financial assistance. Instead, in those instances, Section 504 continues to regulate each agency of the local government or each program of a private organization only if that agency or program receives federal financial assistance. *Winfrey v. City of Chicago*, 957 F.Supp. 1014, 1023 (N.D. Ill. 1997) citing *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991).

Plaintiff argues that Section 504 applies to Defendants because it is a private organization that receives federal funding "as a whole." Alternatively, Plaintiff argues that since

Defendants are principally engaged in the business of providing "education" and "social services," Section 504 applies. *See id.*

### A. Receiving Federal Financial Assistance "As A Whole"

Defendant admits that it received federal funding for two programs it operated during the relevant time. One such program, GirlSpace, "provides girls ages 6-12 living in low-income underserved communities a safe, structured, interactive education experience after school." Def.'s Memo. in Supp. of Mot. to Dismiss at 2. Defendant explains that GirlSpace is funded through a $28,000 grant from the United States Department of Housing and Urban Development's Block Grant Program. *Id.* The second program Defendant admits was funded through federal assistance is the Girl Scouts' Healthy Living Initiative in Evanston, Illinois. *Id.* at 3. This program is designed to help girls from low to moderate income families develop a healthy lifestyle and is funded through a $5,000 grant. *Id.* at 3. Defendant contends that the total amount of federal funding it received for these two programs was "$33,000" or ".12% of their total assets." *Id.* at 4.

Plaintiff argues that the funding of these two programs constitutes funding "as a whole" pursuant to Section 504. However, in her Complaint Plaintiff fails to make this allegation, and instead only alleges that Defendant is "a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(b)." Compl. at 11-12.

First, the Court finds this allegation insufficient in that it fails to provide the Court enough factual detail to determine whether or not Defendant is subject to Section 504. Next, the Court finds Plaintiff's arguments regarding the Defendant receiving funding "as a whole" pursuant to Section 504 lacks merit. The Court refuses to find that funding of .12 percent of Defendant's total assets causes Defendant to be considered a private organization which receives federal funding "as a whole" for the purposes of the statute. The Court finds support for this proposition in the Senate Report from the Civil Rights Restoration Act of 1987 which explained the amended definition of "program or activity" under Section 504. In relevant part, it states:

> Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose. Federal Financial assistance to the Chrysler Company for the purpose of preventing the company from going bankrupt would be an example of assistance to a corporation "as a whole.". . . A grant to a religious organization to enable it to extend the assistance to refugees would not be assistance to the religious organization as a whole if that is only one among a number of activities of the organization . . .

S. Rep. No. 100-64 at 17 (1988).

Thus, the Court finds the federal funding Defendant receives not to be funding "as a whole," and reminds Plaintiff that if a private organization does not fall into one of the two categories

announced in the 1988 amendment, then Section 504 is still "program specific." *Winfrey v. City of Chicago*, 957 F.Supp. 1014, 1024 (N.D. Ill. 1997). If an organization neither receives funding as a whole nor is principally engaged in social services, education, health care, housing or parks and recreation then, Section 504 "proscribes discrimination only with respect to 'program[s]' or 'activities' receiving federal financial assistance." *Id.* citing *Foss v. City of Chicago*, 817 F.2d 34, 34-35 (7th Cir. 1987).

Here, Plaintiff does not allege that she participated in either GirlSpace or the Girl Scouts' Healthy Living Initiative, the two programs for which Defendant received federal assistance. Nor does the Court find Plaintiff's participation in either program likely given the fact that Plaintiff resides in Schaumburg, Illinois and the two programs are based out of Evanston, Illinois and Chicago, Illinois. Thus, the Court finds Plaintiff fails to allege that she participated in any of the federally funded programs and fails to allege that Defendant is a private organization receiving federal funding "as a whole." *See* 29 U.S.C. § 794(b).

### B. Organization Principally Engaged in Education and Social Services

Plaintiff alternatively argues that Defendant falls within the scope of Section 504 because it is a private organization which is principally engaged in the business of providing education and

social services. Plaintiff cites the Defendant's website and Defendant's court filings as evidence that Defendant provides "numerous educational and social service programs." Pl.'s Surreply in Opp. to Mot. to Dismiss at 1.

At the outset, the Court notes that Plaintiff failed to allege that Defendant is a business primarily engaged in providing education or social services in her Complaint. Instead, Plaintiff merely alleged that because Defendant's "major donors" include the United States Department of Justice, and various other governmental entities, that this established that "Defendant is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794." Compl. at 3. For the reasons previously articulated, the Court does not find these allegations sufficient to support the final element required to state a claim under Section 504. Therefore, because Plaintiff's Complaint fails to allege that Defendant satisfies the federal funding requirement, the Court finds the complaint fails to state to claim. *See generally*, *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (stating "a complaint may not be amended by briefs in opposition to a motion to dismiss.")

Notwithstanding this deficiency, the Court will briefly address the merits of Plaintiff's contention that Defendant is a business primarily engaged in providing education and social

service in hopes of determining whether an amendment to Plaintiff's Complaint would be futile.

Section 504 does not define the terms "education" or "social services." Plaintiff submits to the Court dictionary definitions for such terms which the Sixth Circuit employed when it defined "social services" in *Doe v. Salvation Army*, 685 F.3d 564 (6th Cir. 2012).

In *Salvation Army*, the Sixth Circuit examined whether the Salvation Army was exempt from Section 504 because it was a religious organization. *Id.* In determining that it was not, the Sixth Circuit looked to the plain meaning of the phrase "principally engaged." It relied on Black's Law Dictionary which defines the adjective "principal" to mean "[c]hief; primary; [or] most important," and defined "engage" as "[t]o employ or involves oneself; to take part in; to embark on." *Id.* at 571 n.10 citing BLACK'S LAW DICTIONARY (9th Ed. 2009). The Sixth Circuit then defined "social services" as "an activity designed to promote social well-being; [specifically]: organized philanthropic assistance of the sick, destitute, or unfortunate," and also included "organized welfare efforts carried on under professional auspices by trained personnel." *Id.* at 570 citing MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th Ed. 1995) and RANDOM HOUSE UNABRDIGED DICTIONARY 1811 (2d Ed. 1993).

Plaintiff argues that Defendant is principally engaged in the business of social services because of Defendant's programs like the Healthy Living Initiative which aims "to help 75 girls with low to moderate income levels develop a healthy holistic lifestyle. . . ." Pl.'s Opp. to Def.'s Mot. to Dismiss at 7. The Court disagrees.

First, assuming *arguendo*, the Court finds that Defendant engages in *some* social service programs, the fact that a few of Defendant's programs could fall within the definition of "social services" does not mean that Defendant is an organization "principally engaged" in such a venture as Section 504 requires. Indeed, this Court does not consider Defendant's most widely known program, the sale of Girl Scout cookies, to be a "social service" for the purposes of Section 504. Furthermore, the dictionary definition employed in *Salvation Army* (the case which Plaintiff argues supports her position) included the fact that social services are performed by "trained personnel." *Salvation Army*, 685 F.3d at 570. The Court finds this again presents an issue for Plaintiff. Defendant's troop leaders generally are parent volunteers, not trained personnel or trained professionals. These facts taken in conjunction with the fact that the Defendant's mission is to "build girls of courage, confidence, and character," lead the Court to believe that Defendant is not a private organization principally engaged in social service for the purpose

of Section 504. Def.'s Reply Memo. in Supp. of Mot. to Dismiss at 4.

Plaintiff next argues that Defendant is an organization which is principally engaged in providing education and thus is subject to Section 504. Plaintiff specifically references Defendant's GirlSpace program which provides an "interactive, educational experience." *See* Pl.'s Opp. to Def.'s Mot. to Dismiss at 7. Aside from this example, Plaintiff fails to offer a single authority which supports her position. As such, the Court is not persuaded with Plaintiff's assertions, and instead finds Defendant's reference to the legislative history of the Civil Rights Restoration Act compelling.

Defendant argues it should not be considered an organization principally engaged in the business of providing education because it is a private membership organization. Defendant contends that it does not provide a public service and because Congress intended Section 504 to only apply to those private entities which "provide a public service" or "perform governmental functions," Defendant is exempt. *See* S. Rep. No. 100-64 at 4, 20 (1988).

The Seventh Circuit defines a private organization or club as "a group of individuals who imagine the membership as a personification of whatever priorities and interest the club professes to embrace." *EEOC v. Chicago Club*, 86 F.3d 1423, 1437 (7th Cir. 1996). In *Roman v. Concharty Council of Girl Scouts,*

*Inc.*, the court determined that the Girl Scouts was a private club whose "priorities and interests . . . [were] clearly set forth in the Girl Scout Promise and Girl Scout Law . . ." and found those girls "who agree[d] to embrace the laudable goals of the Girl Scouts [could] . . . become a member of the organization" while those girls "who refused to publicly embrace such interests would not become members." *Roman v. Concharty Council of Girl Scouts, Inc.*, 195 F.Supp.2d 1377, 1382 (M.D. Ga. 2002). Because of the private nature of the Girl Scouts, the court held Title VII of the Civil Acts of 1964 and the Americans with Disabilities Act inapplicable. *Id.* In a similar case, the Seventh Circuit held the Boy Scouts were a private club and thus were exempt from Title II of the ADA*. Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1276-77 (7th Cir. 1993). The Court is persuaded by both cases particularly in light of the Supreme Court's instructions granting a similar amount of protection with the ADA and the Rehabilitation Act. *See generally Bragdon v. Abbott*, 524 U.S. 624, 631-32 (1998); *see also Wis. Cmty. Servs. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (stating "[t]he ADA was built on the Rehabilitation Act and the FHAA").

Thus, the Court rejects Plaintiff's arguments regarding Defendant's organization being one as principally engaged in the business of social services or education and finds Plaintiff fails to establish that Defendant is subject to Section 504. Thus, the

Court dismisses Plaintiff's claim that Defendant violated Section 504.

Moreover, because the Court finds Section 504 inapplicable, this Court is without jurisdiction to consider Plaintiff's retaliation claim under Section 504. As such, Plaintiff's retaliation claim is also dismissed.

### IV. CONCLUSION

For the reasons stated herein, the Court grants Defendant's Motion to Dismiss. In light of this ruling, the Court denies Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 10/26/2012