**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MEGAN RUNNION, a minor, through her mother and next friend, EDIE RUNNION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:12-cv-06066 |
| GIRL SCOUTS OF GREATER CHICAGO AND NORTHWEST INDIANA | ) | Jury Demanded |
| Defendant. | ) | |

**AMENDED COMPLAINT**

Megan Runnion through her mother and next friend, Edie Runnion, and by her attorneys, sues the Defendant, Girl Scouts of Greater Chicago and Northwest Indiana ("Defendant"), and states as follows:

**PRELIMINARY STATEMENT**

1. Megan Runnion ("Megan") is a thirteen-year-old girl who joined Girl Scouts when she was in kindergarten. Megan is deaf, and she communicates using American Sign Language ("ASL"). For six years, Megan was provided with a sign language interpreter by Defendant for troop meetings and outings, giving her an opportunity equal to that of her peers to participate in and benefit from Girl Scout activities. Megan loved being a Girl Scout.

2. Near the start of the 2011-2012 school year, as Megan began sixth grade, Defendant stopped providing sign language interpreters. Despite requests by Megan's mother to reinstate the interpreter services, Defendant refused. Then, in January of 2012, without warning to Megan or her family, the troop leader announced that Megan's troop was disbanding. Megan's mother was informed that the troop was being disbanded because of her insistence that Defendant

provide interpreter services for Girl Scout programs and activities. Megan has not been offered placement in a new troop with interpreter services, despite her mother paying dues and requesting such placement. Thus, for the very first time since kindergarten, Megan is not a Girl Scout. Megan is heartbroken at the loss of this important part of her life.

3. By refusing to provide sign language interpreter services and by disbanding the troop in retaliation for requesting auxiliary aids and services, Defendant violates Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Megan brings this lawsuit to compel Defendant to cease its discriminatory practices and to implement policies and procedures that will ensure effective communication and equal access for Megan so that she can participate in and benefit from Defendant's programs and activities. She also seeks compensatory damages, attorneys' fees, and costs.

## PARTIES

4. Plaintiff, Megan Runnion ("Megan"), a minor, resides in Cook County, Illinois, with her parents, Vince and Edie Runnion, and her siblings.

5. Next friend, Edie Runnion, is Megan's mother and resides in Cook County, Illinois, with her husband and four children.

6. Defendant maintains its principal place of business at 20 S. Clark Street, Suite 200, Chicago, Illinois 60603.

7. Defendant is a not-for-profit corporation organized under the laws of Illinois whose stated mission is to "build girls of courage, confidence, and character, who make the world a better place." GIRL SCOUTS, OVERVIEW, http://www.girlscoutsgcnwi.org/overview (last visited March 27, 2013).

8. Defendant is "the largest Girl Scout council in the country, impacting the lives of nearly 84,000 girl members and 24,000 adult volunteers who reside in 245 communities in six Illinois counties (Cook, DuPage, Grundy, Kankakee, Lake, and Will) and four Indiana counties (Jasper, Lake, Newton, and Porter)." GIRL SCOUTS, ABOUT US: WHO WE ARE, http://www.girlscoutsgcnwi.org/about-us (last visited March 27, 2013).

9. For the 2010 tax year, Defendant's net assets were $28,443,485. GIRL SCOUTS OF GREATER CHICAGO AND NORTHWEST INDIANA, FORM 990: RETURN OF ORGANIZATION EXEMPT FROM INCOME TAX (2010).

10. Defendant is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(b).

## JURISDICTION

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the laws of the United States, and 28 U.S.C. §§ 1343(a)(3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government.

12. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district, having its principal place of business at 20 S. Clark Street, Suite 200, Chicago, Illinois 60603.

## PROCEDURAL HISTORY

13. Plaintiff filed her initial Complaint on August 1, 2012.

14. Plaintiff filed a Motion for a Preliminary Injunction on September 11, 2012.

15. Defendant filed a Motion to Dismiss Plaintiff's Complaint on September 11, 2012. This Court granted Defendant's Motion to Dismiss and denied Plaintiff's Motion for a Preliminary Injunction on October 26, 2012.

16. Plaintiff filed a Motion to Alter the Judgment and a Motion for Leave to File an Amended Complaint, attaching the proposed Amended Complaint as an exhibit, on November 21, 2012. The proposed Amended Complaint alleged that the Defendant is subject to Section 504 because it is a "private organization . . . which is principally engaged in the business of providing education, health care, . . . social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A)(ii) In addition, the proposed Amended Complaint alleged that Defendant is subject to Section 504 because Defendant is also an indirect recipient and/or beneficiary of federal financial assistance through the Girl Scouts of the United States of America ("GSUSA") so as to constitute federal financial assistance "as a whole." (See Plaintiff's proposed Amended Complaint, filed in this matter on November 21, 2012 at docket entry no. 32, Exhibit A).

17. This Court granted Plaintiff's Motion to Alter the Judgment and for Leave to File an Amended Complaint on March 12, 2013. However, this Court directed the Plaintiff to remove from the proposed Amended Complaint any allegations that Defendant is subject to Section 504 because it is a "private organization . . . which is principally engaged in the business of providing education, health care, . . . social services, or parks and recreation." 29 U.S.C. §794(b)(3)(A)(ii).[1]

[1] Pursuant to the Court's Order, all references to Plaintiff's claim that Defendant is subject to Section 504 because it is a "private organization . . . which is principally engaged in the business of providing education, health care, . . . social services, or parks and recreation," 29 U.S.C. § 794(b)(3)(A)(ii), have been removed from this Amended Complaint, but such allegations are incorporated by reference to the extent necessary to be preserved for any future appeal.

## FACTUAL ALLEGATIONS

18. Plaintiff Megan Runnion ("Megan") is a thirteen-year-old girl who is deaf. Megan cannot hear spoken language.

19. Megan requires the assistance of a sign language interpreter to receive information in group settings. The interpreter conveys through sign language the words spoken by the other members of the group.

20. Megan is able to speak, but her speech is not always understood by hearing people. In instances in which Megan cannot make her speech understood, the sign language interpreter performs the additional function of voicing what Megan is communicating through sign language.

21. The "Language/Mode of Communication Used by Student" specified in Megan's Individualized Education Program, developed by her school district, includes American Sign Language ("ASL"). Megan receives 900 minutes per week of sign language interpreter services and 100 minutes per week of speech therapy services. One of Megan's teachers knows sign language, so Megan does not need the services of an interpreter when she is being educated by that teacher.

22. The school district's provision of sign language interpreter services allows Megan to be included in many classes with nondisabled students.

23. The school district also provides an interpreter so that Megan can participate in and benefit from all after school activities in which she is involved.

24. With interpreter services, Megan has been successful in school; she was one of only ten students in her school to receive the 2012 President's Education Award for Outstanding Academic Achievement from President Obama.

25. Megan joined Girl Scouts as a "Daisy," which is the scouting level for girls in kindergarten through Grade 1.

26. Megan's three siblings have all been involved with scouting.

27. In the fall of 2005, when she began kindergarten, Megan became a member of Girl Scout Troop #40795.

28. Troop #40795 was a member troop of Defendant until January, 2012.

29. Troop #40795 held monthly meetings, and members also attended outings such as rock climbing and camping trips.

30. Megan loved being a Girl Scout and rarely missed a troop meeting or outing.

31. Megan looked forward to seeing her friends at Girl Scouts, and especially looked forward to the troop camping trips.

32. Defendant provided sign language interpreter services for troop meetings and outings from the date Megan joined Girl Scouts until August, 2011.

33. By providing a sign language interpreter, Defendant enabled Megan to understand what was said at Girl Scout meetings and activities, gave her equal access to the crucial educational, social, and leadership development offered to her peers, and allowed full communication among Megan, her peers, and her troop leaders.

34. On August 29, 2011, as she had done in previous years, Megan's mother submitted a request for sign language interpreter services prior to the start of the scouting year.

35. On the same day, Defendant denied the request by e-mail, stating: "Currently the Council does not pay for these services."

36. On October 27, 2011, Megan's mother submitted a reasonable accommodation request for interpreter services for a rock climbing event that was to take place on November 20, 2011.

37. On November 10, 2011, Equip for Equality and the National Association of the Deaf, whose assistance Megan's parents had sought after the August denial of interpreter services, sent a letter to Defendant, requesting a qualified sign language interpreter for all of Megan's Girl Scout meetings and outings, including the scheduled November 20, 2011 rock climbing event.

38. On November 17, 2011, Defendant responded to the November 10, 2011 letter by denying that Defendant was subject to Section 504. As to future meetings and events, Defendant stated that it was in the process of developing a uniform policy.

39. Defendant provided an interpreter for the November 20, 2011 rock climbing event and the December 13, 2011 troop meeting.

40. At the same time, Defendant stated that it was still in the process of formulating a response to Edie Runnion's request for an interpreter for all scouting meetings and events.

41. On January 8, 2012, the leaders of Troop #40795 announced at a dinner event that Troop #40795 would be disbanded.

42. This announcement was a complete surprise to Megan and her mother, neither of whom knew that the troop was going to be disbanded.

43. Edie Runnion was advised by the troop leaders that the reason for the disbandment was Defendant's decision to no longer fund interpreters.

44. The troop leaders accused Edie Runnion of being selfish by thinking only about Megan and not the other girls in the troop and told her that it was her fault that the troop was disbanding.

45. The troop leaders also told Edie Runnion that they were informed by Defendant's CEO that providing an interpreter for Megan would cause registration fees for next year to triple.

46. Additionally, the troop leaders told Edie Runnion that, because she was asking for an interpreter for Megan to be able to understand what was being said at the meetings, she was making her daughter more dependent and disabled.

47. Megan very much wants to join and participate in another troop, but because Defendant has not agreed to provide interpreter services in any troop in its jurisdiction, Megan is unable to do so. If Defendant provided interpreter services, Megan would happily join a new troop.

48. Defendant has a "Financial Assistance Policy" which states: "In order to support the participation of girls and adults with special needs, the Council will provide resource lists for girls and adults requiring skilled assistants to participate in Council programs and activities. The contracting of these assistants (e.g., interpreters, occupational therapists, nurse's aides) is the responsibility of the girl's parent(s) or guardian(s) or the adult requiring assistance."

49. Defendant also adopted a "pilot policy," applicable during the events alleged in this Complaint, stating that "support services for those with special needs (e.g., interpreters, occupational therapists, nurse's aides) up to an individual maximum of $50/month per requester. The requestor is responsible for paying the balance of services in excess of $50. Regardless of the number and nature of the requests, there is a council-wide maximum of $5,000."

50. The dollar amount of $50 will not pay for the use of an interpreter on even one occasion.

51. The Policies of the GSUSA state: "All Girl Scout councils and USA Girl Scouts Overseas committees shall be responsible for seeing that membership is reflective of the pluralistic nature of their populations and that membership is extended to all girls in all population segments and geographic areas in their jurisdictions. A girl who meets or can meet membership requirements shall not be denied admission or access to Girl Scout program because of race, color, ethnicity, creed, national origin, socioeconomic status, or disability. Reasonable accommodations shall be made for girls with disabilities to ensure that girls have access to activities." GIRL SCOUTS BLUE BOOK OF BASIC DOCUMENTS 22, POLICIES, *available at* http://www.girlscoutsgcnwi.org/media/files/2012_blue_book.pdf.

52. The Constitution of the GSUSA requires that "[l]ocal Girl Scout councils shall be organized to further the development of the Girl Scout Movement in the United States; to establish local responsibility for leadership, administration, and supervision of the program; and to develop, manage, and maintain Girl Scouting in accordance with the terms of their charters." GIRL SCOUTS BLUE BOOK OF BASIC DOCUMENTS 10, CONSTITUTION OF GIRL SCOUTS OF THE UNITED STATES OF AMERICA, art. VII, *supra*.

53. Defendant states on its website that it is "the largest Girl Scout council in the country." GIRL SCOUTS, ABOUT US: WHO WE ARE, *supra*.

54. The Constitution and Policies of the GSUSA apply to both the GSUSA and Defendant.

55. Defendant is a "private organization [to which federal financial] assistance is extended . . . as a whole." 29 U.S.C. § 794(b)(3)(A)(i).

56. The GSUSA states in its Form 990: Return of Organization Exempt from Income Tax that it receives $2,669,632 in government grants. GIRL SCOUTS OF THE UNITED STATES OF AMERICA, FORM 990: RETURN OF ORGANIZATION EXEMPT FROM INCOME TAX 11 (2010) [hereinafter GSUSA FORM 990].

57. The GSUSA's largest "program service" by expense is "service delivery to local councils: provide direct consulting and technical assistance to all Girl Scout councils to ensure that Girl Scout programs and services are delivered effectively and consistently nationwide." GSUSA FORM 990, 4, *supra*.

58. The GSUSA states in its Form 990 that it provided $322,399 in grants and other assistance to Defendant for "Program Fulfillment." GSUSA FORM 990, 43, 48, *supra*.

59. In addition to being a direct recipient of federal funds, Defendant is also an indirect recipient and/or beneficiary of federal financial assistance through GSUSA.

60. Federal agencies require applicants for federal financial assistance to sign an assurance of compliance, by which the organization "assures and certifies compliance with all applicable Federal statutes, regulations, policies, guidelines, and requirements," including "any applicable statutorily-imposed nondiscrimination requirements" such as the Rehabilitation Act of 1973. See U.S. DEPARTMENT OF JUSTICE, STANDARD ASSURANCES, *available at* www.ojp.usdoj.gov/funding/forms/std_assurances.pdf; *see also* 28 C.F.R. § 41.5(a)(2).

61. Defendant is a beneficiary of Combined Federal Campaign funds and classified itself as a "Public, Social Benefit: Multipurpose" organization and a "Youth Development" organization in selecting "Service Categories" for purposes of "inclusion in the [Combined Federal Campaign] charity list." 2011 CHICAGO AREA COMBINED FEDERAL CAMPAIGN 7, 13, *available at* http://www.chicago.feb.gov/SupportDocs/cfc_chicago_il_brochure_2011.pdf.

62. Defendant is a recipient of federal financial assistance as a whole pursuant to its participation in and benefit from the Combined Federal Campaign.

**COUNT I - VIOLATION OF THE REHABILITATION ACT THROUGH DISCRIMINATION AGAINST MEGAN RUNNION**

63. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1-62 above.

64. Section 504 provides, in pertinent part: "[N]o qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. . ." 29 U.S.C. § 794.

65. Megan is a qualified individual with a disability pursuant to Section 504 because she is substantially limited in the major life activities of hearing and speaking. 29 U.S.C. § 705(20)(B).

66. By refusing to provide interpreter services – and thereby failing to provide the means for Megan to have effective communication with her peers, troop leader, and others – Defendant has excluded Megan from participation in and denied her the benefits of its program and services, solely by reason of her disability.

67. Defendant's policy of treating the contracting of interpreters as the responsibility of a girl's parent or guardian or the adult requiring assistance violates Section 504.

68. Defendant's "pilot policy," which limited funding for interpreter services to a maximum of $50/month per requester and which provided that the requestor is responsible for the balance of the services in excess of $50, violates Section 504 by conditioning auxiliary aids and services on financial need, failing to provide sufficient funds to hire an interpreter, and

delegating to the person with a disability (or her parents) the responsibility for hiring the interpreter.

**COUNT II - VIOLATION OF THE REHABILITATION ACT THROUGH RETALIATION AGAINST MEGAN RUNNION**

69. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1-62 above.

70. Section 504 provides, in pertinent part: "[N]o qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. . ." 29 U.S.C. § 794.

71. Megan is a qualified individual with a disability pursuant to Section 504 because she is substantially limited in the major life activities of hearing and speaking. 29 U.S.C. §705(20)(B).

72. Megan and her mother engaged in protected activity by requesting reasonable modifications and auxiliary aids and services for Megan's hearing disability.

73. By disbanding Megan's troop in retaliation for Megan and her mother requesting reasonable modifications and auxiliary aids and services, Defendant retaliated against Megan for asserting her rights under Section 504 of the Rehabilitation Act.

**PRAYER FOR RELIEF**

WHEREFORE, Megan, through her mother and next friend, Edie Runnion, respectfully request this Court to:

(1) Issue a declaratory judgment that Defendant's actions, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

(2) Enjoin Defendant from further discrimination against Megan and other deaf and hard of hearing individuals;

(3) Order Defendant to promulgate new written policies and procedures to ensure that Defendant will provide auxiliary aids and services at all Girl Scout programs and activities to ensure effective communication with deaf and hard of hearing individuals;

(4) Order Defendant to promulgate new written policies and procedures to ensure that Defendants will notify individuals who are deaf and hard of hearing, including Megan, of their right to auxiliary aids and services at Defendant's programs and activities;

(5) Award Plaintiff compensatory damages;

(6) Grant Plaintiff attorneys' fees, costs and disbursements associated with this lawsuit; and

(7) Award Plaintiff any and all other relief that may be necessary and appropriate.

Respectfully Submitted,

MEGAN RUNNION, a Minor, through
Her mother and next friend,
EDIE RUNNION

By:/s/Steven P. Blonder
One of Her Attorneys

Steven P. Blonder (ARDC No. 6215773)
Joanne Sarasin (ARDC No. 0624335)
Much Shelist, P.C.
191 North Wacker Drive, Suite 1800,
Chicago, Illinois 60606
Telephone: (312) 521-2000
Facsimile: (312) 521-2100
sblonder@muchshelist.com
jsarasin@muchshelist.com

Rachel M. Arfa (ARDC No. 6307418)
Laura J. Miller (ARDC No. 6202721)

Barry C. Taylor (ARDC No. 6199045)
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Telephone: (312) 341-0295
rachela@equipforequality.org
laura@equipforequality.org
barryt@equipforequality.org

Marc Charmatz (Admitted *Pro hac vice)*
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910
(301) 587-7732 (phone)
(301) 587-1791 (fax)
marc.charmatz@nad.org

*Attorneys for Plaintiff*[2]

[2] Attorneys for the Plaintiff gratefully acknowledge the support and work of the following students from the University of Maryland Francis King Carey School of Law: Diana Lockshin and Christine White.