In the

# United States Court of Appeals

## For the Seventh Circuit

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

———————————

No. 14-1729

MEGAN RUNNION, a minor, through
her mother and next friend, EDIE RUNNION,

*Plaintiff-Appellant,*

*v.*

GIRL SCOUTS OF GREATER CHICAGO
AND NORTHWEST INDIANA,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 6066—**Harry D. Leinenweber**, *Judge.*

———————————

ARGUED DECEMBER 10, 2014 — DECIDED MAY 8, 2015

———————————

Before EASTERBROOK, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal presents substantive issues concerning the scope of the federal Rehabilitation Act's coverage of private organizations (like the Girl Scouts) that receive federal funding. Before addressing the merits,

though, we must address some recurring procedural issues involving Federal Rule of Civil Procedure 12(b)(6) dismissals and plaintiffs' opportunities to amend complaints before entry of a final judgment of dismissal. In particular, we focus on how the 2009 amendment to Federal Rule of Civil Procedure 15(a)(1) affects amendment practice in district courts.

Plaintiff Megan Runnion was active in a Girl Scout troop run by defendant Girl Scouts of Greater Chicago and Northwest Indiana, which is the largest regional Girl Scout organization in the United States. Megan is deaf. For several years she benefitted from sign language interpreters provided by the Girl Scouts that enabled her to participate fully in the troop's activities. The Girl Scouts then stopped providing interpreters. When her mother complained, Megan's entire troop was disbanded.

Megan alleges that the Girl Scouts violated the Rehabilitation Act by refusing to provide her with sign language services and then by disbanding her troop because her mother complained. The district court ultimately dismissed the case under Rule 12(b)(6), finding that Megan had failed to allege sufficiently that the Girl Scouts are subject to the Rehabilitation Act. Thinking amendment would be futile under its interpretation of the Rehabilitation Act, the district court dismissed the case without leave to amend.

We reverse. We first set out the facts and procedural history of the case, including the substantive issue about the scope of the Rehabilitation Act's coverage. We then turn to the procedural issues and seek to clarify the proper approach to motions for leave to amend complaints. We then resolve the substantive issues under the Rehabilitation Act and conclude that the district court erred by dismissing the

entire case without giving plaintiff an opportunity to amend her complaint. The district court corrected that error in part by vacating its judgment but then erred again by refusing to allow a proposed amended complaint that is more than sufficient to state a viable claim for relief.

I.    *Statutory and Procedural Background*

Megan filed her original complaint under the Rehabilitation Act in August 2012 when she was twelve years old. The Rehabilitation Act of 1973 uses the Congressional spending power to protect the rights of individuals with disabilities. Section 504 of the Act provides: "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance … ." 29 U.S.C. § 794(a). A person who has been excluded, denied, or discriminated against may sue the recipient of federal funds to enforce her rights. 29 U.S.C. § 794a(a)(2) (incorporating "remedies, procedures, and rights" from Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*).

Megan alleged that she has a hearing impairment, that she was otherwise qualified to participate in and to benefit from programs and activities offered by the Girl Scouts, and that the defendant violated the anti-discrimination provisions of the Rehabilitation Act when it stopped providing her with sign language interpreters that she needs to participate in group activities. The decision excluded her from participating in and denied her the benefits of Girl Scout programs and services solely by reason of her disability. Megan also alleged that the Girl Scouts retaliated against her for re-

questing these services when they disbanded the troop in response to her mother's complaints.

This appeal does not present any question about whether, if the Rehabilitation Act applies to the Girl Scouts, the organization must supply sign-language interpretation. The disputed issue on the merits of this appeal is whether Megan alleged sufficiently that the activities from which she was excluded are covered under the Rehabilitation Act by virtue of the Girl Scouts receiving Federal funding. The act forbids discrimination on the basis of disability in any "program or activity" receiving "Federal financial assistance." 29 U.S.C. § 794(a). As relevant here, the Act defines "program or activity" as "all of the operations" of a private organization, 29 U.S.C. § 794(b), if either (i) the private organization "as a whole" receives federal financial assistance, § 794(b)(3)(A)(i), or (ii) the private organization receives some federal funding and "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," § 794(b)(3)(A)(ii).[1]

In her initial complaint, Megan alleged without more that the Girl Scouts are "a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794." The Girl Scouts promptly moved to dismiss that complaint under Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim), arguing that Megan had not alleged sufficiently that they received federal financial assistance and were covered by the Rehabilitation

---

[1] The Act also contains provisions covering schools systems and a wide range of other federal, state, and local government activities that receive federal financial assistance but those provisions are not relevant in this appeal. See 29 U.S.C. § 794(b)(1) & (b)(2).

No. 14-1729                                                           5

Act. All parties now agree (correctly) that whether the Girl Scouts receive federal financial assistance has no effect on subject-matter jurisdiction and that federal-question jurisdiction under 28 U.S.C. § 1331 is proper. See generally *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (whether employer falls within the limited definition of an employer covered by Title VII of Civil Rights Act of 1964 is a merits-related determination and does not concern subject-matter jurisdiction). We need not worry further about subject-matter jurisdiction.

In its first decision, issued October 26, 2012, the district court sided with the Girl Scouts in an opinion granting the motion to dismiss under Rule 12(b)(6). The district court found that Megan's original complaint had not alleged with sufficient factual detail that the Girl Scouts received federal financial assistance within the meaning of 29 U.S.C. § 794(b). Though Megan tried to argue that the defendant organization received financial assistance as a whole or was principally engaged in providing education or social services, the district court concluded that she had failed to allege facts supporting either theory.

The conclusion that Megan needed to allege in her complaint facts supporting specific legal theories was problematic, to say the least. Even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Federal Rules of Civil Procedure do not require code pleading. Under the old pre-Rules regime of code pleading, plaintiffs were required to plead the elements of a cause of action along with facts supporting each element. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.) (describing code pleading as requiring "the pleader [to] set forth the 'facts' constituting a 'cause of

action'"). Under the modern regime of the Federal Rules, the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has "substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (per curiam). As explained in *Johnson*:

> Petitioners stated simply, concisely, and direct-ly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.

135 S. Ct. at 347; accord, *Bausch v. Stryker Corp.*, 630 F.3d 546, 559–62 (7th Cir. 2010) (reversing dismissal where complaints gave fair notice of claims); *Bartholet v Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (Federal Rules of Civil Procedure do not require complaint to specify legal theory or statute that supports claim for relief). Plaintiff has not ar-gued on appeal that her original complaint was sufficient, though, so we need not reach a conclusion on that question.

Normally, the plaintiff would have an opportunity to avoid any harm caused by a problematic dismissal by amending her complaint to try to add what the district court found was lacking. Here, however, the district court took an unusual step after finding that the original complaint failed to state a claim. Without affording plaintiff any opportunity to try to correct the deficiencies the court had identified, the district court entered final judgment in favor of defendant.[2]

---

[2] We must note the confusion about whether the district court en-tered a final judgment on October 26, 2012. The court's opinion conclud-

No. 14-1729                                                                    7

In light of the presumption in favor of giving plaintiffs at least one opportunity to amend, see, e.g., *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013), denying a plaintiff that opportunity carries a high risk of being deemed an abuse of discretion. The district court supported its decision with a finding that amendment would be futile, but that conclusion was based on a novel interpretation of the Rehabilitation Act and a preliminary view of the facts that could prove mistaken following amendment.

---

ed by saying only that "the Court grants Defendant's Motion to Dismiss." Though the court considered whether amendment might be futile, it said nothing about dismissing the case, let alone dismissing it with prejudice or denying leave to amend the complaint. The same day the court docketed a separate piece of paper called "Judgment in a Civil Case," but that document also failed to acknowledge the difference. It said: "It is hereby ordered and adjudged that the motion by defendant to dismiss is granted," but said nothing about dismissal of the action or whether plaintiffs were denied all relief.

If that were all we had before us, those documents would not have amounted to a final judgment. See *Paganis v. Blonstein*, 3 F.3d 1067, 1070 (7th Cir. 1993) (noting that a judgment entry that simply grants a motion is too ambiguous to determine the disposition of the case). However, the court's electronic docket entry for the "Judgment" includes a notation that is not on the judgment itself: "Case Terminated." The discrepancy between the electronic docket and the docketed judgment is unfortunate, but the "Case Terminated" notation is a sufficiently clear indication that the district court believed it was finished with the case, at least where no party was prejudiced by the inconsistency. The parties reasonably concluded that final judgment of dismissal had been entered. See *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020–21 (7th Cir. 2013); *Furnace v. Board of Trustees of Southern Illinois Univ.*, 218 F.3d 666, 669–70 (7th Cir. 2000); *Principal Mutual Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership*, 845 F.2d 674, 676 (7th Cir. 1988).

Faced with a judgment entered without an opportunity to amend, Megan filed a motion to alter the judgment under Federal Rule of Civil Procedure 59(e) and for leave to file an amended complaint under Rule 15(a)(2). Megan attached a proposed amended complaint that set forth more specific allegations about the Girl Scouts' funding and why she believed the defendant both had received funding as a whole and is an organization primarily engaged in education and social services. The proposed amended complaint cited publicly available information, including public statements by the Girl Scouts, about the organization's funding and programming.

On March 12, 2013, the district court granted the motion and vacated the judgment of October 26, 2012. There was a catch, though. The court said Megan could try to establish that defendant was a private organization receiving financial assistance "as a whole," but the court refused to allow her to pursue the theory that the defendant was principally engaged in education or social services. The district court gave Megan thirty days to file a new amended complaint elaborating on only the "as a whole" theory for finding federal financial assistance.

Megan filed such an amended complaint on April 11, 2013. The Girl Scouts then filed a new motion to dismiss, which the district court granted on March 7, 2014. This time, the court's judgment was clear: it said the court was indeed entering a final judgment in favor of defendant and against plaintiff. Megan then filed this appeal. She no longer pursues the theory that the Girl Scouts receive federal financial assistance "as a whole." She stakes her appeal instead on the argument that the district court erred by refusing to allow

No. 14-1729                                                                 9

her to pursue the theory that the Girl Scouts are "principally engaged in the business of providing education, health care, … social services, or parks and recreation" as alleged in the proposed amended complaint submitted with her Rule 59(e) motion.

## II.  *Procedural Issues*

Before turning to the merits, we must sort out some procedural issues posed by the district court dismissing the original complaint and entering judgment without granting leave to amend the complaint. First, we consider the general approach district courts must take in reviewing motions for leave to amend. Second, we address how review of such motions is affected by the district court's entry of judgment. Finally, we examine the impact of the 2009 amendment to Rule 15(a)(1) on both pre- and post-judgment motions for leave to amend.

### A.  *General Rule—Liberal Approach to Amending Pleadings*

When the district court granted the motion to dismiss the original complaint, Megan no longer had a right to amend her complaint as a matter of course. See Fed. R. Civ. P. 15(a)(1) (right to amend expires 21 days after service of defendant's motion to dismiss under Rule 12(b)). Ordinarily, however, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed. We have said this repeatedly. E.g., *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d at 1024; *Bausch v. Stryker Corp.*, 630 F.3d at 562; *Foster v DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (collect-

ing cases). Rule 15(a)(2) governs when court approval is needed to amend a pleading: "The court should freely give leave [to amend] when justice so requires." See generally *Foman v. Davis*, 371 U.S. 178, 182 (1962) (reversing denial of leave to amend by citing to Rule 15(a)(2)'s mandate to freely give leave to amend and stating "this mandate is to be heeded").

When a district court denies a plaintiff such an opportunity, its decision will be reviewed rigorously on appeal. In *Barry Aviation*, we said that giving leave to amend freely is "especially advisable when such permission is sought after the dismissal of the first complaint. Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." 377 F.3d at 687 (emphasis added). We also endorsed the reasons for this practice given by Professors Wright and Miller:

> The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on

> the face of a defective pleading whether plain-
> tiff actually can state a claim.

*Id*. at 687, quoting 5A Charles Alan Wright & Arthur R. Mil-
ler, Federal Practice and Procedure § 1357 (2d ed. 1990).

Where it is clear that the defect cannot be corrected so
that amendment is futile, it might do no harm to deny leave
to amend and to enter an immediate final judgment, just as
when an amendment has been unduly delayed or would
cause undue prejudice to other parties. See, e.g., *Airborne
Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666
(7th Cir. 2007); *James Cape & Sons Co. v. PCC Construction Co.*,
453 F.3d 396, 400–01 (7th Cir. 2006); see also *Foman*, 371 U.S.
at 182 (leave to amend may be denied based on futility, un-
due delay, undue prejudice, or bad faith). Such cases of clear
futility at the outset of a case are rare, though, and this is not
one of them.

The liberal standard for amending under Rule 15(a)(2) is
especially important where the law is uncertain. In the wake
of *Twombly* and *Iqbal*, there remain considerable uncertainty
and variation among the lower courts as to just how de-
manding pleading standards have become. For a good recent
illustration, see the majority and dissenting opinions in
*McCleary-Evans v. Maryland Dep't of Transportation*, 780 F.3d
582 (4th Cir. 2015), which disagree about how to reconcile
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), with *Twombly*
and *Iqbal*. In the face of that uncertainty, applying the liberal
standard for amending pleadings, especially in the
early stages of a lawsuit, is the best way to ensure that cases will
be decided justly and on their merits. See *Foman*, 371 U.S. at
181–82, citing Fed. R. Civ. P. 1 (Federal Rules of Civil Proce-
dure "should be construed and administered to secure the

just, speedy, and inexpensive determination of every action
and proceeding.").

B. *Amendment Following Entry of Judgment*

Despite the liberal standard for amending pleadings, the
Girl Scouts argue that our review of the district court's deci-
sion to bar Megan from pursuing the "principally engaged"
theory of Rehabilitation Act coverage should be more defer-
ential because it was made as part of a decision on a Rule
59(e) motion to modify a final judgment. We reject this ar-
gument, which contends in essence that one error by the dis-
trict court (prematurely entering a final judgment on the ba-
sis of futility) should insulate another error (erroneously
denying leave to amend on the basis of futility) from proper
appellate review.

It is true that when a district court has entered a final
judgment of dismissal, the plaintiff cannot amend under
Rule 15(a) unless the judgment is modified, either by the dis-
trict court under Rule 59(e) or 60(b), or on appeal. *Camp v.
Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995), citing *Car Carriers,
Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir. 1984); see
also Fed. R. Civ. P. 59(e) (motion to alter or amend judg-
ment); Fed. R. Civ. P. 60(b) (motion for relief from final
judgment). It is also true that Rules 59(e) and 60(b) provide
"extraordinary remedies reserved for the exceptional case."
*Foster*, 545 F.3d at 584, citing *Dickerson v. Board of Educ. of Ford
Heights*, 32 F.3d 1114, 1116 (7th Cir. 1994); see also 6 Charles
Alan Wright & Arthur R. Miller, Federal Practice and Proce-
dure § 1489 (3d ed.) (noting importance of finality of judg-
ments and collecting cases noting same).

Because Rules 59(e) and 60(b) are reserved for extraordi-
nary cases, the Girl Scouts urge us to apply a more demand-

ing standard to post-judgment motions to amend than we do to motions to amend filed prior to the entry of judgment. But the extraordinary nature of these remedies does not mean that a different standard applies—at least when judgment was entered at the same time the case was first dismissed. When the district court has taken the unusual step of entering judgment at the same time it dismisses the complaint, the court need not find other extraordinary circumstances and must still apply the liberal standard for amending pleadings under Rule 15(a)(2). See *Foster*, 545 F.3d at 584–85 (noting that district courts "routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss"); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

Lest there be any doubt about the soundness of applying the liberal amendment policy of Rule 15(a)(2) to post-motion judgment motions for relief, the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962), itself illustrates the point. The district court had granted a motion to dismiss a contract claim based on the statute of frauds and immediately entered judgment dismissing the case. *Id.* at 179. Plaintiff sought post-judgment relief that was treated as a Rule 59(e) motion, and because of some confusion about the timing of a notice of appeal, the appeal was dismissed. *Foman v. Davis*, 292 F.2d 85, 87 (1st Cir. 1961). The Supreme Court reversed, and it applied the liberal amendment policy of Rule 15(a)(2) to the post-judgment motion for relief. *Foman*, 371 U.S. at 182.

Consistent with that approach, we have repeatedly applied that same liberal policy of amendment when reviewing district court decisions on post-judgment motions for leave

to amend. *Bausch*, 630 F.3d at 562; *Foster*, 545 F.3d at 584–85; *Camp*, 67 F.3d at 1290. We have reversed district court decisions that provide no explanation for why they denied amendment. See *Foster*, 545 F.3d at 584–85 (vacating denial of post-judgment relief made without explanation); accord, *Foman*, 371 U.S. at 182 ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."). Similarly, we have affirmed a decision to grant post-judgment leave to amend when there was no reason the amendment should otherwise have been denied. See *Camp*, 67 F.3d at 1289–90. Finally, we have reversed a decision denying post-judgment amendment when the reason given by the district court for denying the amendment—futility of amendment—was not supported by the record. See *Bausch*, 630 F.3d at 562.

In other words, a district court cannot nullify the liberal right to amend under Rule 15(a)(2) by entering judgment prematurely at the same time it dismisses the complaint that would be amended. As with pre-judgment motions for leave to amend, the district court must still provide some reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend, and we will review that decision under the same standard we would otherwise review decisions on Rule 15(a)(2) motions for leave to amend.

## C. *Effect of the 2009 Amendment*

The Girl Scouts also argue that the district court was right to reject Megan's "principally engaged" theory because the 2009 amendment to Rule 15(a)(1) requires district courts

No. 14-1729                                               15

reviewing motions for leave to amend under Rule 15(a)(2) to apply a more demanding standard than we have previously applied. The 2009 amendment imposed a new and shorter deadline for a plaintiff to exercise her right to amend her complaint as a matter of course, so the Girl Scouts suggest that we should similarly restrict plaintiff's ability to amend with leave of the court.

Before 2009, a plaintiff who lost a Rule 12(b)(6) motion challenging an original complaint had an absolute right to file an amended complaint. The rule then provided: "A party may amend its pleading once as a matter of course: … before being served with a responsive pleading … ." A motion under Rule 12(b)(6) is not a "pleading," so the plaintiff had a right to amend "as a matter of course" after the motion was granted. E.g., *Camp*, 67 F.3d at 1289.

In 2009, Rule 15(a)(1) was amended to limit this right to amend as a matter of course:

> A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

The advisory committee notes explain that the 2009 amendment

> will force the pleader to consider carefully and promptly the wisdom of amending to meet the

arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim.

Based on the 2009 amendment, the Girl Scouts argue that if Megan thought she might need to amend her complaint in light of the motion to dismiss, she should have done so within 21 days after she received that motion to dismiss pointing out deficiencies in her complaint. Her decision not to amend, according to the Girl Scouts, exposed her to the risk that the district court would grant the motion to dismiss and enter judgment dismissing the entire case, which the Girl Scouts argue is reason enough to find that the district court did not abuse its discretion in denying leave to amend.

We disagree. The 2009 amendment did not impose on plaintiff's choice a pleading regime of "one-and-done." Adopting that regime would attribute to the 2009 amendment of Rule 15(a)(1) a far greater coercive power than is evident in the text of the amended rule or the advisory committee's explanation. The only coercive effect evident in the text is that 21 days after service of a Rule 12 motion, a plaintiff's right to amend changes from one guaranteed under Rule 15(a)(1) to one governed by the liberal standard under Rule 15(a)(2). The loss of a guaranteed right to amend as a matter of course can be important, and the prospect of that loss may help persuade some plaintiffs confronted with a Rule 12 motion to respond by amending rather than spending time and money arguing about easily corrected deficiencies, whether real or imagined. The advisory committee

hoped that such a response might resolve a motion to dismiss without court action.

But a plaintiff who receives a Rule 12(b)(6) motion and who has good reason to think the complaint is sufficient may also choose to stand on the complaint and insist on a decision without losing the benefit of the well-established liberal standard for amendment with leave of court under Rule 15(a)(2). That subsection was not amended and still applies after the right to amend as a matter of course has lapsed. The need for a liberal amendment standard remains in the face of uncertain pleading standards after *Twombly* and *Iqbal*.[3]

III. *Merits of the Proposed Amendment*

This excursion through the procedural history brings us to the question whether the district court erred by refusing to consider the "principally engaged" theory of Rehabilitation Act coverage alleged in Megan's proposed amended complaint. Under that theory, all of the Girl Scouts' operations would be subject to the Act if the organization "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A)(ii). The sole reason the district court gave for denying amendment was that under its interpretation of the statute, any amendment asserting the "principally engaged" theory would be futile. In the district court's view, the complaint could never be amended to state a valid claim because the Rehabilitation Act excludes private

---

[3] A district court does not have the discretion to remove the liberal amendment standard by standing order or other mechanisms requiring plaintiffs to propose amendments before the court rules on a Rule 12(b)(6) motion on pain of forfeiture of the right to amend.

membership organizations like the Girl Scouts from its reach even if they might otherwise be principally engaged in providing one of the services designated in the statute.

Despite the Girl Scouts' argument to the contrary, none of the other grounds for denying leave to amend apply here. Plaintiffs did not fail to take advantage of several opportunities to amend. See, e.g., *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012) (affirming denial of fourth opportunity to amend). Nor is there any evidence that Megan unduly delayed amending the complaint or acted in bad faith. Once the district court told Megan that her complaint was deficient and entered judgment, she filed her Rule 59(e) motion and proposed amended complaint within 28 days. Upon consideration of that motion, the district court made no finding of delay or bad faith and was willing to allow Megan to amend her complaint on the other theory in her motion seeking leave to amend—that the Girl Scouts received federal funding "as a whole." The district court treated the two theories differently only because it thought one was futile while the other was not.

In this case there is a further reason for concluding that Megan did not unduly delay by waiting to amend her complaint until after it was dismissed by the district court: there is uncertainty as to whether the Rehabilitation Act covers private organizations like the Girl Scouts. The relevant statutory language has been the subject of relatively few decisions, so this is not a case where a plaintiff obtusely failed to comply with well-established legal standards. Accordingly, Megan could reasonably have expected that the allegations in her original complaint would survive a motion to dismiss. Moreover, given how difficult it might be to discover all of

the Girl Scouts' activities, the disputed issue is one that may require considerable time, effort, and money to litigate. It was reasonable for her to avoid that expense until she was sure that she failed to survive the motion to dismiss. Cf. *Bausch v. Stryker Corp.*, 630 F.3d at 560–61 (recognizing that plaintiffs' pleading burden is "commensurate with the amount of information available to them") (citation and internal quotation marks omitted).

That leaves us with a denial based on futility. Generally, denials of leave to amend are reviewed for abuse of discretion. *Gandhi v. Sitara Capital Management, LLC*, 721 F.3d 865, 868 (7th Cir. 2013). But when the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim. See, e.g., *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Accordingly, our review for abuse of discretion of futility-based denials includes *de novo* review of the legal basis for the futility. See *Gandhi*, 721 F.3d at 868–69; accord, *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) ("If … the district court applies an incorrect legal rule as part of its decision, then the framework within which it has applied its discretion is flawed, and the decision must be set aside as an abuse.").

We conclude that the district court erred by finding that amendment would be futile. The proposed amended complaint here did not fail to state a claim upon which relief could be granted. Neither the text nor the legislative history of the Rehabilitation Act suggests that Megan's claim is barred as a matter of law because organizations like the Girl Scouts are categorically exempt from the Rehabilitation Act.

Absent that categorical bar, Megan's proposed amended complaint is more than sufficient to state a claim upon which relief can be granted.

A. *The Rehabilitation Act and Private Membership Organizations*

We turn first to whether the district court correctly interpreted § 794(b)(3)(A) as not applying to organizations like the Girl Scouts. In finding that private membership organizations like the Girl Scouts could never be subject to the Rehabilitation Act, the district court found in the statute a requirement that the private organization provide a public service and be open to the public. This interpretation cannot be squared with the text of § 794(b)(3)(A). As written, the provision applies broadly to all sorts of private organizations so long as they receive federal funding and are "principally engaged" in providing one of the services enumerated in the statute. Since § 794(b)(3)(A)'s very purpose is to set out when private organizations are subject to the Rehabilitation Act, it is reasonable to assume that Congress would have been more explicit if it had wanted to exempt private membership organizations.

For example, Congress might have expressly exempted private membership organizations or private organizations not open to the public, as it has done in other similar statutes. See, e.g., 42 U.S.C. § 2000a(e) (exempting from Title II of Civil Rights Act of 1964 "a private club or other establishment not in fact open to the public"); 42 U.S.C. § 2000e(b) (excluding "bona fide private membership club" from definition of employer subject to Title VII); 42 U.S.C. § 12111(5)(B)(ii) (excluding "bona fide private membership

club" from definition of employer subject to Americans with Disabilities Act).

No such express exemptions are found in the text of the Rehabilitation Act. To find a broad exemption for private membership organizations, we would have to read into the statute an implied requirement that the private organization be open to the public. The district court did exactly that, supporting its categorical exemption with reference to case law interpreting similar anti-discrimination statutes and with legislative history of the Civil Rights Restoration Act of 1987, which amended the Rehabilitation Act. The fact that other anti-discrimination statutes exempt private membership organizations expressly, see *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1276–77 (7th Cir. 1993), does not support but instead undermines the argument for an implied exemption here. We conclude that the Rehabilitation Act covers private organizations not open to the public if they receive federal financial assistance within the scope of § 794.

Because the text of the statute can apply so clearly to all private organizations that receive federal financial assistance, there is no need to resort to legislative history. See *EEOC v. Chicago Club*, 86 F.3d 1423, 1434 (7th Cir. 1996). In any event, the nuggets of legislative history cited by the district court do not support a categorical exemption for private membership organizations or organizations not open to the public. In the district court's reading of the legislative history, the Rehabilitation Act should apply only to private entities that "provide[] a public service," S. Rep. No. 100-64, at 4, 20 (1988), or "perform governmental functions," *id.* at 20. In the court's view, a private membership organization cannot be deemed to provide a "public service" because it provides

services only to its members and is not generally open to the public.

When read in context, however, the passages from the legislative history merely explain why the provision was limited to covering organizations providing the enumerated services. See S. Rep. No. 100-64, at 4 ("if the corporation provides a public service, such as social services, education, or housing, the entire corporation is covered"); *id*. at 18 (explaining that the bill under consideration would cover "private entities … that provide services that are traditionally regarded as within the public sector, i.e., those enumerated in part (3)(A)(ii) of the definition of 'program or activity'"); *id*. at 20 ("Even private corporations are covered in their entirety … if they perform governmental functions, i.e., are 'principally engaged in the business of providing education, housing, social services, or parks and recreation.'"). To be sure, the services enumerated in the statute are often provided by governmental or public service entities. But private corporations choosing to provide these services—whether to their own members (or tuition-paying students) or to the public at large—are providing a "public service" in the way Congress envisioned.[4]

---

[4] Under the Girl Scouts' narrower reading, it is difficult to explain the presence of 29 U.S.C. § 794(b)(2), which provides that traditional private and public school systems are subject to the Rehabilitation Act. See 34 C.F.R. § 104.39; 65 Fed. Reg. 68050, 68051 (Nov. 13, 2000) (explaining application of Act to private schools). Thus, for § 794(b)(3)(A)(ii) to have any substance for education services, it must apply to private organizations providing education services outside of the traditional school context.

Even so, private membership organizations could still be exempt from the statute if they were thought to be, as a categorical matter, principally engaged in businesses other than providing the services enumerated in the statute. Cf. S. Rep. No. 100-64, at 18 ("Because they are principally religious organizations, institutions such as churches, dioceses and synagogues would not be considered to be 'principally engaged in the business of providing education, health care, housing, social services or parks or recreation,' even though they may conduct a number of programs in these areas."). But nothing about the nature of private membership organizations makes it impossible for them to be engaged principally in providing the services found in the statute.

The primary activity of at least some private membership organizations that receive federal financial assistance is to engage in programs that fall within the statute. Others may not engage in any such programs, and some might engage in providing those sorts of services on the side. Whatever the case may be, the statute provides the standard—"principally engaged in the business of providing education, health care, housing, social services, or parks and recreation"—that can be applied on a case-by-case basis to private membership organizations to determine if they are covered by the Rehabilitation Act. Cf. *Doe v. Salvation Army in U.S.*, 685 F.3d 564, 571 (6th Cir. 2012) (declining to adopt a categorical rule for religious organizations because the legislative history "says nothing about a religious organization whose participation in such programs is its primary activity, or that churches may never be subject to liability under 29 U.S.C. § 794(a) if the vast majority of their activities are the provision of social services").

B. *"Principally Engaged" Coverage Under 29 U.S.C. § 794(b)(3)(A)(ii)*

Since no categorical exemption applies, we next evaluate whether plaintiff's proposed amendment was otherwise futile. We apply the Rule 12(b)(6) standard for evaluating the legal sufficiency of a complaint. *General Electric Capital*, 128 F.3d at 1085 ("The opportunity to amend a complaint is futile if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (citation omitted). That means we must accept as true all factual allegations in the complaint. *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). A claim for relief must be plausible rather than merely conceivable or speculative. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Carlson*, 758 F.3d at 826–27. But all this means is that the plaintiff must "include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson*, 758 F.3d at 827, quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010). At this pleading stage, we do not ask whether these things actually happened; instead, "the proper question to ask is still '*could* these things have happened.'" *Id.*, quoting *Swanson*, 614 F.3d at 404–05.

Turning to the requirements for establishing that the Rehabilitation Act covers a private organization under § 794(b)(3)(A)(ii), we know that a plaintiff must eventually prove that the private organization is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." The statute does not define what these individual businesses entail or explain

what it means to be "principally engaged" in them. See *Salvation Army*, 685 F.3d at 568.

Because the list of activities in § 794(b)(3)(A)(ii) is written in the disjunctive, Megan must eventually show that defendant engages in any one of these businesses. Megan focuses on the education and social services provided by the Girl Scouts.[5] In terms of what businesses might qualify as providing education, the statute envisions that education is not limited to the sort of instruction received in a traditional school system. As noted above, formal educational systems are covered by a separate provision, § 794(b)(2). Section 794(b)(3)(A)(ii), then, covers the sort of education offered by stand-alone schools or by other private organizations seeking to train and develop individuals. As to what constitutes a social service, it is "an activity designed to promote social well-being" such as "organized philanthropic assistance of the sick, destitute, or unfortunate." *Salvation Army*, 685 F.3d at 570, quoting Merriam Webster's Collegiate Dictionary 1115 (10th Ed. 1995).[6]

---

[5] Though she focuses on education and social services, plaintiff also points to some Girl Scout projects that involve providing health care and parks and recreation.

[6] The district court adopted a definition of social service that required the service to be performed by trained personnel. Though some definitions of social services may hint at the need for trained personnel, we see no textual basis for this limit, nor can we see why Congress would have imposed such a requirement here. Even if it had, nothing in the proposed amended complaint suggests that the Girl Scouts' volunteer efforts are carried out without supervision by trained personnel. While the district court speculated that troop leaders are generally parent volunteers, it would be just as easy to infer that those volunteers

What it means to be "principally engaged" in providing these services poses a distinct question. "Principally engaged" has been interpreted in other contexts to mean "the primary activities of a business, excluding only incidental activities." See *Doe*, 685 F.3d at 571. If any one of the designated activities is principal, that would be sufficient. Contrary to the Girl Scouts' suggestion, however, a private organization would also fall within the statute if it engages in a mix of the statutorily enumerated services, e.g., if it provides social services *and* education services and those services in the aggregate make up the primary activities of the private organization. There is no reason to think Congress was laying out mutually exclusive conditions. Reading the statute this way also ensures that organizations that focus on providing more than one of the enumerated public services without committing to just one are still covered.[7] This reading also renders unnecessary the difficult task of classifying hybrid activities that provide, for example, both education and social services. At bottom, then, the relevant inquiry is whether

---

have received at least some training from the organization. Either way, this is the sort of dispute that cannot be resolved on the pleadings.

[7] A simple example inspired by the federal government's amicus brief illustrates why this is the correct reading. Suppose a private organization devotes 35% of its resources to education, 25% to social services and 40% to selling food. If each enumerated activity were considered in isolation, the organization might be deemed principally engaged in selling food even though 60% of its resources were spent providing the services enumerated in the statute. Now suppose a second organization devotes 51% of its resources to education, 9% to social services, and 40% to selling food. The second organization would certainly be covered. We find it hard to believe that Congress intended the statute to cover the second organization but not the first. Both are principally engaged in providing the enumerated services.

providing the statutorily enumerated services—the public services Congress specified—make up the primary activities of the organization.

Megan's proposed amended complaint alleges plausibly that the Girl Scouts are a private organization principally engaged in the business of providing the services found in § 794(b)(3)(A)(ii). Beyond merely alleging that the Girl Scouts received federal funds and were engaged in some of those activities as their principal business activities, which would have been sufficient for pleading purposes, the proposed amended complaint went much further. Megan's complaint cites numerous instances in which the defendant has characterized itself and its programs as educational. The constitution of the national organization—which plaintiff alleges the Chicago-area defendant must follow—provides that "Girl Scouting is a nonformal, experiential, and cooperative education program that promotes girls' personal growth and leadership development." Plaintiff also cites a 2011 financial statement saying that defendant's organization is "an out-of-school educational program designed to help girls put into practice the fundamental principles of the Girl Scout movement."[8]

---

[8] It does not pose a problem for plaintiff that she attached these exhibits to her complaint. In evaluating the sufficiency of a complaint, "the court may also consider documents attached to the pleading without converting the motion into one for summary judgment." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012), citing Fed. R. Civ. P. 10(c). Further, and contrary to the district court's suggestion in its opinion dismissing the first complaint, plaintiff also would have been permitted to use these exhibits for the first time in opposition to a Rule 12(b)(6) motion in the district court. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("a party opposing a Rule 12(b)(6) motion may submit

Going even further, the proposed amended complaint identifies many examples of programs the organization offers that indicate the organization is principally engaged in providing the services enumerated in the statute. Many of these programs are plausibly classified as providing education, health care, social services, or parks and recreation. The defendant even classifies the sale of cookies—perhaps the Girl Scouts' most publicly visible program—as an integral part of achieving its overall educational goals. Taken all together, the allegations in the complaint exceed what is needed to allege plausibly that defendant is principally engaged in the business of providing the services enumerated in the statute. It would not have been futile to permit Megan to amend, and the district court's contrary conclusion was a legal error that caused it to abuse its discretion in denying leave to amend.

Lest we be misunderstood, a plaintiff need not provide all the level of detail provided by Megan's proposed amended complaint to survive a motion to dismiss. As detailed as the proposed amended complaint is, we recognize that plaintiff has focused on the portion of defendant's activities and statements that are publicly available. Discovery may reveal additional activities and other evidence that will inform how best to classify defendant under the statute. That is why we have explained that plaintiffs' "pleading burden should be commensurate with the amount of information available to them." See *Bausch*, 630 F.3d at 561 (internal quo-

---

materials outside the pleadings to illustrate the facts the party expects to be able to prove").

No. 14-1729                                    29

tation marks omitted), quoting *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig.*, 623 F.3d 1200, 1212 (8th Cir. 2010) (Melloy, J., dissenting). We cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information she could not access without discovery.

The district court thus erred first when it entered judgment on the original complaint and again when it rejected as futile the "principally engaged" theory of Rehabilitation Act coverage in plaintiff's proposed amended complaint. The final judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.